[No. 41158-6-I.    Division One.    February 1, 1999.]

THE STATE OF WASHINGTON, *Respondent*, v. RULAN C., *Appellant*.

*Sharon J. Blackford* of *Washington Appellate Project*, for appellant.

*Norm Maleng, Prosecuting Attorney,* and *David Ryan, Deputy,* for respondent.

KENNEDY, C.J. — Rulan C. (Rulan) was convicted of one count of possession of cocaine with intent to deliver. He argues that the warrantless strip search that produced the cocaine in his possession was illegal and that the fruits of that search should be suppressed. Because the search violated Article I, section 7 of the Washington Constitution, we reverse the trial court's suppression ruling.

## FACTS

Rulan called an apartment while several officers, armed with a warrant, were searching it. He engaged in a conversation with one of the officers and agreed to sell the officer $60 worth of cocaine. He went to the apartment and knocked on the door. Officers arrested him as he opened the door. They placed him on the ground and checked his mouth for drugs. Then, they took him to the apartment's bathroom and told him to take off all his clothes. When Rulan was naked, the officers had him bend over and cough so that they could check his buttocks for drugs. The officers found cocaine in one of Rulan's shoes.[1]

Rulan petitioned the trial court to suppress the cocaine evidence because it resulted from an illegal search. The

[1]As the State conceded during oral argument for this appeal, it is unclear from the record whether the officers looked into Rulan's shoes before Rulan removed all of his other clothing, or afterward. It is clear only that the cocaine was discovered "during the course of this strip search[.]" Report of Proceedings at 14.

trial court found that Rulan had been strip searched, but that "the search was reasonable under the circumstances and under the statute and carried out in a reasonable manner." Report of Proceedings at 84. The court did not suppress the evidence.

## DISCUSSION

Rulan argues that the police strip search of him was illegal because it was not authorized by statute and nonstatutory warrantless strip searches are prohibited by the United States and Washington Constitutions. Thus, he contends, the fruits of the strip search must be suppressed.

■ We analyze this issue under the Washington Constitution. Our Supreme Court has said that where challenges are made under both the federal and state constitutions, the state constitution should be addressed first. *See State v. Ferrier,* 136 Wn.2d 103, 110 n.4, 960 P.2d 927 (1998); *State v. Johnson,* 128 Wn.2d 431, 443, 909 P.2d 293 (1996); *State v. Wethered,* 110 Wn.2d 466, 471, 755 P.2d 797 (1988); *State v. Coe,* 101 Wn.2d 364, 373-74, 679 P.2d 353 (1984). Because we conclude that the warrantless strip search of Rulan violated Article I, section 7 of the Washington Constitution, we need not determine whether the search also violated the Fourth Amendment.

■ Subject to a few "jealously and carefully drawn exceptions" warrantless searches and seizures are unreasonable per se under Article I, Section 7 of the Washington Constitution. *State v. Hendrickson,* 129 Wn.2d 61, 70-71, 917 P.2d 563 (1996) (internal quotation marks and citations omitted). The burden is on the prosecutor to show that a warrantless search or seizure falls within one of the recognized exceptions, such as exigent circumstances or searches incident to a lawful arrest. *Id.*

The State argues first that the search of Rulan was not a strip search because the evidence was found in his shoe, and thus strip search analysis is not required. The State reasons that because a search of a suspect's shoe, alone,

would not be a strip search as defined by our Legislature, and because the cocaine was not discovered as a result of the officers' inspection of Rulan's genitals, buttocks, anus or undergarments, this search should be viewed like any other search incident to a lawful arrest and suppression of the cocaine is not required under the fruit of the poisonous tree doctrine.

■ RCW 10.79.070 defines "strip search" as "having a person remove or arrange some or all of his or her clothing so as to permit an inspection of the genitals, buttocks, anus, or undergarments of the person or breasts of a female person." Thus, it is true that removal of Rulan's shoes, alone, would not have been a strip search under this statutory definition. But the record does not support a conclusion that the officers found the cocaine in Rulan's shoe as a distinct aspect of their search of his person, separate and apart from the strip search. The officers had Rulan remove all of his clothing. They found the cocaine in the shoe "[d]uring the course of this strip search[.]" Report of Proceedings at 14. Thus, we reject the State's contention that the evidence in this case was not the fruit of a strip search.

We also reject the State's contention that *State v. Rose*, 128 Wn.2d 388, 909 P.2d 280 (1996) supports the trial court's ruling in the instant case. In *Rose*, a landlord tipped police that his tenant was growing marijuana on the rented property. The landlord accompanied police to the premises, where they found evidence of a grow operation in a gardening shed behind the house, and where they also looked into a window from the front porch of the house, with the aid of a flashlight, and saw cut marijuana plants and a scale. Based on these observations, police obtained a telephonic search warrant. The subsequent search resulted in the discovery of a complete marijuana grow operation and 14 pounds of marijuana. The trial court suppressed the evidence and this court affirmed. The prosecutor petitioned for review by the Supreme Court, challenging only this court's holding that the officer's warrantless observations

through the window of the home constituted an unlawful search, and conceding that the intrusion into the back of the property where the shed was located was unlawful. A divided Supreme Court reversed this court and the trial court, ruling that police had every right to go onto the front porch of the home, shine a flashlight into the window and view what was thereby made visible in that "[t]he plain view rule does not go into hibernation at sunset." *Rose*, 128 Wn.2d at 397. The majority also ruled that the illegal search of the back of the premises did not turn the otherwise lawful vantage point of the front porch into an unlawful one. *Id.* at 393 n.2.

Thus, the State reasons in the instant matter, even if the strip search of Rulan violated his constitutional rights under Article I, section 7, the cocaine in the shoe was untainted because the cocaine was, indeed, in Rulan's shoe—where police could lawfully search incident to arrest—and not between Rulan's buttocks or in his undergarments. Assuming without holding that police can lawfully search a person's shoes incident to arrest, this case is not like *Rose*. That is, the officers did not find cocaine in Rulan's shoe and then seek a telephonic search warrant for a strip search. Neither did they seek a telephonic search warrant for a strip search, after finding no cocaine in Rulan's mouth and reasoning that the cocaine he promised to sell to the officer must, therefore, be secreted elsewhere on his person. Here, no telephonic search warrant was sought at all. The *admissible* evidence in *Rose* was obtained pursuant to a telephonic search warrant.

■ The strip search statute does not apply to the present case because the search was not conducted at a detention facility as required by the statute. *See* RCW 10.79.120 ("RCW 10.79.130 through 10.79.160 apply to any person in custody at a holding, detention, or local correctional facility . . . ."); *see also State v. Audley*, 77 Wn. App. 897, 906, 894 P.2d 1359 (1995); *State v. Colin*, 61 Wn. App. 111, 809 P.2d 228 (1991).

RCW 10.79.060, stating the legislative intent of the statute, provides:

It is the intent of the legislature to establish policies regarding the practice of strip searching persons booked into holding, detention, or local correctional facilities. It is the intent of the legislature to restrict the practice of strip searching . . . persons booked into holding, detention, or local correctional facilities to those situations where such searches are necessary.

Because the strip search statute does not apply, the State must rely on an exception to the warrant requirement. *See, e.g., Johnson*, 128 Wn.2d at 447.

■ The exigent circumstances exception applies where it is impractical to obtain a warrant because the suspect is fleeing, the officer or the members of the public are in danger, or based on mobility of a vehicle, and mobility or threatened destruction of evidence. *See, e.g., State v. Groom*, 133 Wn.2d 679, 686, 947 P.2d 240 (1997) (citing *State v. Campbell*, 15 Wn. App. 98, 547 P.2d 295 (1976); *State v. Sanders*, 8 Wn. App. 306, 506 P.2d 892 (1973)); *Audley*, 77 Wn. App. at 904. "The focus of this exception is the impracticality of obtaining a warrant." *Id*. at 905. There is no evidence in this record that it would have been impractical to obtain a telephonic search warrant to perform a strip search of Rulan's person.

The State also contends that the cocaine evidence is admissible under the inevitable discovery doctrine. This doctrine was first adopted in *State v. White*, 76 Wn. App. 801, 808-09, 888 P.2d 169 (1995), *aff'd* 129 Wn.2d 105, 915 P.2d 1099 (1996). *See also State v. Richman*, 85 Wn. App. 568, 933 P.2d 1088, *review denied*, 133 Wn.2d 1028 (1997) (citing *State v. Gunwall*, 106 Wn.2d 54, 720 P.2d 808, 76 A.L.R.4TH 517 (1986)). The rule enables a court to admit illegally obtained evidence that would otherwise be suppressed if the evidence would have been inevitably discovered. *White*, 76 Wn. App. at 808. Because the State did not raise inevitable discovery below, the requisite factual inquiry for proper analysis was not done, and it would be inappropriate for us to speculate that this evidence inevitably would have been discovered.

The State has failed to meet its burden of justifying this warrantless strip search. Accordingly, we hold that the search and seizure of the cocaine evidence violated Article I, section 7 of the Washington Constitution because it was an unreasonable warrantless strip search that did not fall under any of the narrow and jealously guarded exceptions to the general rule that warrantless searches are, per se, illegal.

We reverse the trial court's suppression ruling and remand for such further proceedings as shall be consistent with this opinion.

Reversed.

WEBSTER and BECKER, JJ., concur.

Reconsideration granted in part and opinion modified November 23, 1999.