[Nos. 38038-9-I; 38161-0-I. Division One. March 15, 1999.]

THE STATE OF WASHINGTON, *Respondent*, v. MIHAI BOBIC, ET AL., *Appellants*.

*Eric Broman* and *James R. Dixon* of *Nielsen, Broman & Associates, P.L.L.C.*, for appellant Mihai Bobic.

*Stella S. Buder* of *Washington Appellate Project*, for appellant Igor Stepchuk.

*Norm Maleng, Prosecuting Attorney,* and *Katherine M. Flack, Henry J. Corscadden,* and *Charles P. Sainsbury, Deputies*, for respondent.

GROSSE, J. — The predicate inquiry to a double jeopardy analysis requires an informed definition of the offense for

which it is alleged the State seeks multiple punishments. The crime of conspiracy in Washington can be defined to require the State charge and prove, as an element of the offense, the underlying felony that is the object of the conspiracy. That is how the State charged and proved the crimes at issue here.

Thus, while the defendants may have been participants in a wider agreement encompassing the entire scheme of automobile theft, stripping stolen cars, purchasing the remaining hulk at auction, reassembling the cars and reselling them, they were prosecuted only for each of the simpler offenses of conspiracy to steal the cars, conspiracy to possess stolen property, and conspiracy to traffic in stolen property. And, as to each, the State proved all of the requisite elements, and the jury convicted the defendants under appropriate "to convict" instructions. Because the defendants did not challenge the charge nor object to the instructions, this approach to the definition of the offenses became the law of the case, and, so defined, raises no double jeopardy issue, as each offense is distinct in law and fact. We do not reach and do not decide whether Washington's conspiracy statute can be interpreted to encompass only an entire agreement to commit a crime or crimes.

## FACTS

Mihai Bobic and Igor Stepchuk were charged with various crimes arising from an alleged conspiracy to steal and strip vehicles, to repurchase the abandoned vehicle hulks from insurance company auctions, and then to reassemble and sell the vehicles. Bobic was convicted of conspiracy to commit first degree theft, conspiracy to commit first degree possession of stolen property, conspiracy to commit first degree trafficking in stolen property, and six of eight counts of first degree possession of stolen property. Stepchuk was also convicted on the three conspiracy counts and five of eight counts of possession of stolen property.

Bobic and Stepchuk appeal their conspiracy convictions

contending that the convictions violate their double jeopardy rights. In the alternative, they argue that their conspiracy convictions constitute the same criminal conduct and the sentencing court erred when it failed to count them as one offense for purposes of computing their offender scores. Stepchuk also appeals his possession of stolen property convictions claiming that there is insufficient evidence to prove possession or accomplice liability.

Bobic appeals the denial of his motion to suppress evidence seized in a storage unit rented to a third person. The detective observed the contents of the storage unit from an adjacent unit through a small hole in the wall. Bobic contends that the trial court improperly concluded that he did not have standing to challenge the search and that he did not have an expectation to privacy.

Bobic also appeals the court's denial of his motion to suppress identifications based on two photo montages. One montage consisted of only six photos: one photo of Bobic and five of his alleged coconspirators. The other included his photo with those of two coconspirators and three other individuals. Bobic contends that the montages were impermissibly suggestive.

Both Bobic and Stepchuk contend that the trial court erred in imposing sentences that exceed the statutory maximum for conspiracy to traffic in stolen property in the first degree. The State concedes error. Bobic also claims that the court imposed a 66-month sentence for conspiracy to commit possession of stolen property conviction, in excess of the 60-month statutory maximum. The court, however, merged this offense with the possession of stolen property convictions and the resulting 66-month sentence was within the standard range.

## DISCUSSION
### I. Multiple Conspiracy Convictions and Double Jeopardy

A prosecution subjecting a defendant to multiple convictions, and thus multiple punishments, for the same offense, violates both state and federal constitutional

protections against double jeopardy.[1] Stepchuk and Bobic contend that their constitutional rights were infringed when they were convicted on three counts of conspiracy, each under the same conspiracy statute, for acts arising from a single, ongoing, multiobjective agreement. The offenses with which they were charged and convicted, however, as defined by the unchallenged "to convict" instructions, are neither the same in fact nor the same in law. Thus, the defendants were not subjected to jeopardy more than once for the same offense.

Washington has adopted the "same elements" test established in *Blockburger v. United States*,[2] whereby the determination of whether a prosecution violates a defendant's double jeopardy rights involves an analysis of whether provisions of one statute requires proof of an additional fact which the other does not.[3] Distinguishing *Blockburger*, however, the United States Supreme Court stated in *Braverman v. United States*,[4] that a single, multiobjective conspiratorial agreement that violates a single federal statute involves a different analysis than a single agreement that violates multiple statutes or several distinct agreements that violate a single statute.[5] The Court held that where there is a single agreement violating several provisions of a single statute, only a single penalty can be imposed under the federal conspiracy statute, no matter how diverse the objectives of the agreement.[6]

The State, citing *State v. Smith*,[7] attempts to distinguish *Braverman* by arguing that the federal conspiracy statute differs from Washington's conspiracy statute because in

---

[1]*State v. Calle*, 125 Wn.2d 769, 888 P.2d 155 (1995).

[2]*Blockburger v. United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 2d 306 (1932).

[3]*State v. Gocken*, 127 Wn.2d 95, 101, 107, 896 P.2d 1267 (1995).

[4]*Braverman v. United States*, 317 U.S. 49, 54, 63 S. Ct. 99, 87 L. Ed. 23 (1942).

[5]*Id.*

[6]*Id.*

[7]*State v. Smith*, 131 Wn.2d 258, 930 P.2d 917 (1997).

Washington the underlying crime is an element of the conspiracy charge. We note, however, that *Smith* is an instructional error case rather than a double jeopardy case. Moreover, the court did not explicitly state that the underlying crime was a necessary element of the crime of conspiracy. Rather, the court merely held that a "to convict" instruction was constitutionally defective when it purported to be a complete statement of the law, yet stated the wrong crime as the underlying offense.[8] As a result, whether Washington's conspiracy statute mirrors the federal statute as interpreted by *Braverman*, or in contrast penalizes a conspiratorial agreement based on each objective of the agreement towards which a conspirator has taken a substantial step, is an issue of first impression.

The federal conspiracy statute and Washington's conspiracy statute are very similar. Compare 18 U.S.C. § 371:

> If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined under this title or imprisoned not more than five years, or both.

with RCW 9A.28.040(1):

> A person is guilty of criminal conspiracy when, with intent that conduct constituting a crime be performed, he or she agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them takes a substantial step in pursuance of such agreement.

Washington's statute, RCW 9A.28.040(3)(a)-(e), however, further classifies the degree of the conspiracy based on the degree of at least one objective of the agreement.

(3) Criminal conspiracy is a:

---

[8]*See Smith*, 131 Wn.2d at 263 (holding a "to convict" instruction constitutionally defective when it listed the crime of "conspiracy to commit murder in the first degree" rather than the crime of "murder in the first degree" as the underlying crime).

(a) Class A felony when an object of the conspiratorial agreement is murder in the first degree;

(b) Class B felony when an object of the conspiratorial agreement is a class A felony other than murder in the first degree;

(c) Class C felony when an object of the conspiratorial agreement is a class B felony;

(d) Gross misdemeanor when an object of the conspiratorial agreement is a class C felony;

(e) Misdemeanor when an object of the conspiratorial agreement is a gross misdemeanor or misdemeanor.

Apparently assuming a distinction between Washington's statute and the federal statute, the State charged Bobic and Stepchuk with separate counts of conspiracy to engage in specific criminal acts, namely theft, possession of stolen property, and trafficking in stolen property. As a result, the State was required to prove that the defendants agreed to commit those specific acts rather than simply proving an agreement to engage in "conduct constituting a crime." Bobic and Stepchuk, obviously content with the higher burden of proof, chose not to challenge the information or "to convict" instructions so defining the crimes.

On appeal, rather than engaging in a statutory analysis of Washington's conspiracy statute similar to the Supreme Court's analysis of the federal conspiracy statute in *Braverman*, Stepchuk and Bobic apply *Braverman* as if Washington's statute and the federal statute are interpreted uniformly. While we agree that it is possible that the Legislature intended such an interpretation, no such argument was made by the defendants.

Because the statute could be interpreted in a manner consistent with the State's interpretation and the defendants fail to challenge the jury instructions at trial or on appeal, we need not make a determination as to which definition of the offense prevails. The definition of the offense contained in the instructions becomes the law of the case.

And as defined in this case, each of the offenses with which the defendants were charged required proof of an additional fact that the other did not. Finding no constitutional deprivation, we affirm.

## II. Multiple Conspiracy Convictions and Same Criminal Conduct

As an alternative to their double jeopardy argument, Stepchuk and Bobic contend that the trial court erred in counting their convictions for conspiracy to commit theft and conspiracy to traffic in stolen property as separate crimes when calculating their offender scores. They argue that the two convictions constitute the same criminal conduct. Because the two crimes do not require the same criminal intent, we disagree.

Under the Sentencing Reform Act of 1981, if two or more crimes require the same criminal intent, are committed at the same time and place, and involve the same victim, the two crimes constitute the same criminal conduct and are treated as one for purposes of calculating the offender score.[9] The defendants were convicted of conspiracy to commit theft and conspiracy to traffic in stolen property covering the same time period, and the two conspiracies share the same victim, namely the State. The only remaining question, therefore, is whether the conspiracies require the same criminal intent.

■ ■ In determining whether two crimes require the same criminal intent we use an objective rather than a subjective test.[10] We may consider, however, the extent to which one crime furthered the other.[11] Thus, despite the fact that the intent behind conspiracy to commit theft, which is to acquire property, differs from the intent behind conspiracy to traffic in stolen property, which is to profit

[9]RCW 9.94A.400(1)(a).

[10]*State v. Dunaway*, 109 Wn.2d 207, 216-17, 743 P.2d 1237, 749 P.2d 160 (1987).

[11]*State v. Williams*, 135 Wn.2d 365, 368, 957 P.2d 216 (1998).

through the sale of stolen property, the intent of the crimes may be the same because the theft clearly furthered the trafficking.

Nevertheless, the facts at sentencing, viewed objectively, also support the conclusion that the crimes constituted separate criminal conduct. And because we review a trial court's conclusion that two crimes constituted separate criminal conduct for abuse of discretion or misapplication of the law,[12] where the facts at sentencing could support either finding, we defer to the trial court's finding.[13] Accordingly, we reject the defendants' contention that the two crimes constituted the same criminal conduct.

## III. Automatic Standing to Suppress Storage Unit Evidence

■ The automatic standing doctrine grants to persons charged with a possessory crime standing to challenge the constitutionality of a search or seizure.[14] Bobic contends that the court erred in holding that he did not have standing to challenge a warrantless search of a storage locker leased to a third party on his behalf. While the automatic standing doctrine remains viable in Washington, the detective's actions in this case did not amount to a "search" within the scope of the Fourth Amendment or article I, section 7 of the Washington Constitution. As we may uphold the trial court's ruling on any basis supported by the record,[15] we affirm, holding that no constitutional violation occurred.

The United States Supreme Court abandoned the automatic standing doctrine as a matter of federal constitu-

---

[12]*State v. Walden*, 69 Wn. App. 183, 188, 847 P.2d 956 (1993).

[13]*State v. Rodriguez*, 61 Wn. App. 812, 816, 812 P.2d 868 (1991).

[14]*State v. Simpson*, 95 Wn.2d 170, 181, 622 P.2d 1199 (1980); *State v. Barnes*, 85 Wn. App. 638, 932 P.2d 669 (1997).

[15]*Ertman v. City of Olympia*, 95 Wn.2d 105, 621 P.2d 724 (1980).

tional law in *United States v. Salvucci*,[16] based on an earlier ruling that a defendant's pretrial testimony cannot be used as substantive evidence at trial. The Washington Supreme Court declined to follow *Salvucci* in the plurality opinion of *State v. Simpson*,[17] and further in *State v. Carter*.[18] Thus, the automatic standing doctrine is still alive in Washington.

██ ██ Bobic clearly has automatic standing to challenge a "search" of the storage locker in question. But where, as here, " ' "a law enforcement officer is able to detect something by utilization of one or more of his senses while lawfully present at the vantage point where those senses are used, . . . [t]he object under observation is not subject to any reasonable expectation of privacy and the observation is not within the scope of the constitution." ' "[19] In other words, the officer's observations do not constitute a search because the object under observation is deemed to be in "open view."

██ ██ The detective in this case observed the contents of the storage unit in question by standing in an adjacent unit and looking through a hole in a common wall. The owner of the storage facility provided access to the storage unit from which the detective made the observations. From the record and the briefs, it appears that the detective's method of observation was neither extraordinary nor invasive, as the contents of the storage unit could be viewed through the hole by the owner or manager of the facility, or by anyone renting or using the unit from which the observation was made. Under the open view doctrine, the fact that the officer was at the location where the observa-

---

[16]*United States v. Salvucci*, 448 U.S. 83, 92-93, 100 S. Ct. 2547, 2553-54, 65 L. Ed. 2d 619 (1980).

[17]*Simpson*, 95 Wn.2d 170.

[18]*State v. Carter*, 127 Wn.2d 836, 850, 904 P.2d 290 (1995). We take note of the court's statement, "We have not followed [*Salvucci*] in this case and decline to overrule *Simpson* until the issue is more adequately brought before us." While the court appeared to express an interest in revisiting the issue of automatic standing, like *Carter*, this case does not adequately present the issue.

[19]*State v. Rose*, 128 Wn.2d 388, 392, 909 P.2d 280 (1996) (citations omitted).

tion takes place solely to look for evidence of a crime is immaterial.[20] For these reasons, we conclude that the detective's observations, which provided the basis for the search warrant, violated no constitutional right, and the court properly denied Bobic's suppression motion.

## IV. Motion to Suppress Identifications Based on Photo Montages

 Bobic argues that the two photo montages used for pretrial identification were impermissibly suggestive because one montage included only Bobic and five others who all were uncharged coconspirators in a car theft ring, and the other included Bobic and two coconspirators along with three other individuals. In order to prevail, Bobic must demonstrate not only that the procedure was impermissibly suggestive, but also, under the totality of circumstances, that the procedure was " 'so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.' "[21] We hold that assuming arguendo the montages were impermissibly suggestive, there was no substantial likelihood of irreparable misidentification.

Factors considered in determining whether an identification procedure creates a likelihood of irreparable misidentification include: "(1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated at the confrontation; and (5) the time between the crime and the confrontation."[22] Our review of the record, and in light of the trial court's evaluation of these factors and the lack of argument that the in-court identifica-

---

[20]*Rose*, 128 Wn.2d at 393.

[21]*See State v. Hilliard*, 89 Wn.2d 430, 438, 573 P.2d 22 (1977) (quoting *Simmons v. United States*, 390 U.S. 377, 384, 88 S. Ct. 967, 19 L. Ed. 2d 1247 (1968)).

[22]*State v. Shea*, 85 Wn. App. 56, 59, 930 P.2d 1232 (1997).

tions were unreliable, we conclude that Bobic's due process rights were not violated.

## V. Sufficiency of the Possession of Stolen Property Evidence

 Stepchuk challenges the sufficiency of the evidence supporting his five convictions for possession of stolen property. He argues that evidence that he possessed a stolen car part is insufficient to support a conviction for possession of an entire stolen vehicle. He also contends that evidence proving his involvement in a conspiracy is insufficient to show that he is guilty of possession as an accomplice.

Stepchuk's contentions are correct. But viewing the evidence and reasonable inferences therefrom in the light most favorable to the State, evidence establishing that he possessed stolen vehicle parts, considered with evidence of an ongoing conspiracy, constitutes circumstantial evidence sufficient to support the jury's verdict. Accordingly, we affirm all five of the possession convictions.

## VI. Sentences Beyond the Statutory Maximum

 Stepchuk was sentenced to 64.5 months for conspiracy to traffic in stolen property in the first degree. Bobic was sentenced to 79.5 months for the same offense. As a class C felony, the statutory maximum is 60 months. We accept the State's concession of error and remand for entry of sentences of 60 months on these counts. Bobic's claim that the trial court improperly sentenced him to 66 months for conspiracy to commit possession of stolen property is not well taken, given that the trial court merged this offense with the possession of stolen property convictions, for which a 66-month sentence was appropriate.

We affirm Bobic's and Stepchuk's convictions but remand their sentences for conspiracy to traffic in stolen property in the first degree for entry of a sentence of 60 months.

WEBSTER and BECKER, JJ., concur.

Review granted at 138 Wn.2d 1008 (1999).