111 P.3d 1206 (2005)
127 Wash.App. 41
STATE of Washington, Respondent,
v.
Robert G. POSENJAK, Appellant.
No. 22856-8-III.
Court of Appeals of Washington, Division 3, Panel Seven.
April 14, 2005.
Publication Ordered and Reconsideration Denied May 17, 2005.
*1209 Robert G. Posenjak, Coupeville, WA, for Appellant.
Walter G. Edgar, Attorney at Law, Waterville, WA, for Respondent.
KURTZ, J.
¶ 1 Robert Posenjak was convicted of unlawful hunting of big game in the second degree. On appeal, he asserts that (1) he has hunting rights under the Point Elliot Treaty; (2) the evidence of the elk carcass should have been suppressed because it was obtained without a search warrant; and (3) his admissions should have been suppressed because he was not provided his Miranda[1] warnings. We affirm the judgment of the trial court.

FACTS
¶ 2 On September 9, 2002, Robert Posenjak shot and killed an elk on Washington State land in Kittitas County. At that time, there was no open hunting season for elk in the Kittitas area where the elk was taken. He transported the elk carcass to his residence in East Wenatchee. Mr. Posenjak did not have a hunting license or an elk tag. He attached a Snoqualmoo Tribe hunting tag to the elk.
¶ 3 Mr. Posenjak is a great-great-great-grandson of Chief Pat-ka-nam, who signed the Point Elliot Treaty. Mr. Posenjak is a member of the Snoqualmoo Tribe. The Snoqualmoo Tribe is not recognized by the federal government as a tribe with treaty rights. Additionally, Washington State does not recognize a Snoqualmoo hunting tag.
*1210 ¶ 4 Game Officer Graham Grant received a radio call from the Washington State Department of Fish and Wildlife concerning the possible poaching of an elk. He was provided a license plate number, which was traced to the Posenjak residence.
¶ 5 There are two driveways leading into the Posenjak residence. The south driveway leads toward a garage located at the rear of the residence. The north driveway leads to the front of the residence. There are no gates or "no trespassing" signs. In order to investigate the poaching report, Officer Grant entered the Posenjak residence through the south driveway. He parked his vehicle in front of the open garage door, where he observed Mr. Posenjak skinning an elk.
¶ 6 Mr. Posenjak exited the garage and approached the officer. Officer Grant indicated that he was investigating a possible poaching. Mr. Posenjak volunteered that he and his brothers had killed the elk in Kittitas County, that they were members of the Snoqualmoo Tribe, and that they were exercising their tribal hunting rights under the Point Elliot Treaty. He claimed that he had these rights based upon a decision of the Kittitas County District Court. The meeting was cordial and noncoercive. Mr. Posenjak was not detained or arrested. Mr. Posenjak returned to the garage and continued skinning the elk. Because he was unfamiliar with the hunting rights of the Snoqualmoo Tribe, Officer Grant contacted his superior, Sergeant Doug Ward, for assistance.
¶ 7 Sergeant Ward arrived and advised Mr. Posenjak that the Snoqualmoo Tribe did not have any recognized hunting rights. Officer Grant provided Mr. Posenjak his Miranda warnings. Mr. Posenjak waived his Miranda rights and again described to the officers his shooting of the elk and his tribal hunting right to do so. Officer Grant and Sergeant Ward confiscated the elk.
¶ 8 Mr. Posenjak was charged with unlawful hunting of big game in the second degree. His suppression motion was denied. At the bench trial, he did not seek to admit any evidence. He only called one witness, his brother Lon Posenjak. Lon Posenjak testified that he believed that there was elk hunting in the area before the introduction of elk by Washington State because his grandfather, William Gildow, told him "where the elk were" when he was a child. Clerk's Papers (CP) at 443. He testified that his grandfather was listed on the "Robin Rolls." CP at 443. Mr. Posenjak was convicted of unlawful hunting of big game in the second degree. On appeal before the superior court, the ruling was affirmed.

ANALYSIS
¶ 9 Tribal Hunting Rights. Mr. Posenjak asserts that he has hunting rights under the Point Elliott Treaty, as a member of the Snoqualmoo Tribe, which is a successor in interest to a signatory tribe of the Point Elliott Treaty. He also contends that he killed the elk on aboriginal and traditional hunting grounds. Finally, he insists that the State of Washington does not have jurisdiction over him because he is a member of the Snoqualmoo Tribe.
¶ 10 Standard of Review. The interpretation of treaties is reviewed de novo. Confederated Tribes of Chehalis Indian Reservation v. Washington, 96 F.3d 334, 340 (9th Cir.1996). Questions of historical fact are reviewed for clear error. Id. at 342 (citing United States v. Lummi Indian Tribe, 841 F.2d 317, 319 (9th Cir.1988)). The application of law to facts is a mixed determination of law and fact that is reviewed de novo. United States v. Washington, 730 F.2d 1314, 1317 (9th Cir.1984).
¶ 11 Jurisdiction. In general, an Indian going outside of the reservation is subject to nondiscriminatory state laws unless there is express federal law to the contrary. United States v. Washington, 520 F.2d 676, 684 (9th Cir.1975) (quoting Mescalero Apache Tribe v. Jones, 411 U.S. 145, 148-49, 93 S.Ct. 1267, 36 L.Ed.2d 114 (1973)). A treaty exemption constitutes such an express federal law. However, the assertion of a treaty right is an affirmative defense that must be pled by the defendant. State v. Moses, 79 Wash.2d 104, 110, 483 P.2d 832 (1971). To establish the affirmative defense, the defendant must show by a preponderance of the evidence (1) the existence of the treaty, *1211 (2) of which he is a beneficiary, and (3) that, as a matter of law, the treaty bars him from the operation and enforcement of the hunting laws and regulations. Id.
¶ 12 In this case, the State of Washington has jurisdiction over Mr. Posenjak. He shot the elk outside the reservation on state land. In order to be exempt from Washington State hunting laws, Mr. Posenjak must establish the affirmative defense that he has treaty rights and that the treaty rights bar him from the operation and enforcement of the hunting laws.
¶ 13 Treaty Rights. Only the tribe that signed the treaty, or the signatory tribe, can exercise treaty rights. United States v. Washington, 641 F.2d 1368, 1372 (9th Cir.1981). Individual Indians do not have any treaty rights, even if they are descendents of the signors of the treaty, because a treaty is a contract between sovereigns, not individuals. Washington v. Washington State Commercial Passenger Fishing Vessel Ass'n, 443 U.S. 658, 675, 679, 99 S.Ct. 3055, 61 L.Ed.2d 823 (1979).
¶ 14 "Indians later asserting treaty rights must establish that their group has preserved its tribal status." United States v. Oregon, 29 F.3d 481, 484 (9th Cir.1994). The signatory tribe has to establish two separate factors. First, it must show that it has maintained an "organized tribal structure." Id. This can be "shown by establishing that `some defining characteristic of the original tribe persists in an evolving tribal community.'" Id. Second, it must show that "a group of citizens of Indian ancestry is descended from a treaty signatory." United States, 520 F.2d at 693.
¶ 15 A tribe asserting tribal rights, as a successor in interest to a signatory tribe, bears the burden of demonstrating successorship. United States v. Suquamish Indian Tribe, 901 F.2d 772, 775 (9th Cir.1990). To obtain such tribal rights, the successor tribe must obtain "treaty tribe status." Id. at 776. Showing that the successor tribe includes descendents of a signatory tribe is inadequate. Id. Establishing common ancestry is inadequate. United States, 29 F.3d at 484. Instead, the successor tribe must establish the "actual merger or combination of tribal or political structure." Id. In other words, it "must trace a continuous and defining political or cultural characteristic to the entity that was granted the treaty rights." Id. at 485.
¶ 16 In this case, Mr. Posenjak has failed to establish that he has treaty rights under the Point Elliot Treaty. First, Mr. Posenjak has failed to establish that he is a member of a signatory tribe. He states he is a member of the Snoqualmoo Tribe, which is not a signatory tribe. Second, Mr. Posenjak has failed to establish that the Snoqualmoo Tribe is a successor tribe. Mr. Posenjak has provided no evidence that the Snoqualmoo Tribe and a signatory tribe engaged in any "actual merger." Third, Mr. Posenjak argues that he has treaty rights because his great-great-great-grandfather signed the Point Elliott Treaty. Treaty rights are rights of signatory tribes, not individual Indians.
¶ 17 Lastly, Mr. Posenjak asserts that he is entitled to relief under the Point Elliott Treaty because a county district court found that the Snoqualmoo Tribe was a successor tribe in an earlier case. According to Mr. Posenjak, because the State did not appeal the county district court decision, the decision is precedential and provides the Snoqualmoo Tribe with treaty rights. A decision of a county district court is not precedential, whether appealed or not.
¶ 18 In conclusion, based on the evidence presented at trial, Mr. Posenjak does not have any treaty rights under the Point Elliot Treaty.
¶ 19 Suppression of Evidence. In reviewing a suppression hearing, an appellate court determines whether substantial evidence supports the court's findings of fact. State v. Mendez, 137 Wash.2d 208, 214, 970 P.2d 722 (1999). Findings of fact that are not assigned error are viewed as verities on appeal. RAP 10.3(g); State v. Hill, 123 Wash.2d 641, 644, 870 P.2d 313 (1994). Findings are also viewed as verities if there is substantial evidence to support the findings. Hill, 123 Wash.2d at 644, 870 P.2d 313. *1212 "Substantial evidence exists where there is a sufficient quantity of evidence in the record to persuade a fair-minded, rational person of the truth of the finding." Id. Conclusions of law are reviewed de novo. Mendez, 137 Wash.2d at 214, 970 P.2d 722.
¶ 20 Mr. Posenjak asserts that the elk carcass is not admissible under the open view doctrine. Essentially, he argues Officer Grant should not have taken the south driveway or looked into the garage door. For that reason, he maintains that the elk should not have been seized.
¶ 21 Under the Washington Constitution, article I, section 7 "`[n]o person shall be disturbed in his private affairs, or his home invaded, without authority of law.'" State v. Goucher, 124 Wash.2d 778, 782, 881 P.2d 210 (1994). In analyzing an alleged unconstitutional search, "the court considers whether the defendant had a legitimate expectation of privacy and whether that expectation is one that society is willing to recognize as reasonable." State v. Rose, 128 Wash.2d 388, 392, 909 P.2d 280 (1996). "[W]arrantless searches are per se unreasonable unless they fall under a specific exception to the warrant requirement." State v. Turner, 114 Wash.App. 653, 657, 59 P.3d 711 (2002). The exceptions are "limited and narrowly drawn" and the burden is on the State to establish such an exception. Id.
¶ 22 The open view doctrine is an exception. No search occurs if the open view doctrine is satisfied. Rose, 128 Wash.2d at 392, 909 P.2d 280. Under the open view doctrine, contraband that is viewed when an officer is standing in a lawful vantage point is not protected. State v. Neeley, 113 Wash. App. 100, 109, 52 P.3d 539 (2002). If an officer is lawfully present at a vantage point and detects something by using one or more of his or her senses, no search has occurred. Id. (quoting State v. Cardenas, 146 Wash.2d 400, 408, 47 P.3d 127 (2002)). Based upon his observation, the officer may seek a search warrant. State v. Hoke, 72 Wash.App. 869, 874, 866 P.2d 670 (1994). The officer may not simply intrude into a constitutionally-protected area to obtain the object. Id.
¶ 23 Police who have legitimate business may enter areas of the curtilage which are impliedly open to the public. Rose, 128 Wash.2d at 392, 909 P.2d 280 (quoting State v. Seagull, 95 Wash.2d 898, 902, 632 P.2d 44 (1981)). However, the police may not make a "substantial and unreasonable departure" from the curtilage. Hoke, 72 Wash.App. at 874, 866 P.2d 670. The court determines the scope of the implied invitation by looking at the facts and circumstances of each case. Id. "An officer is permitted the same license to intrude as a reasonably respectful citizen." Seagull, 95 Wash.2d at 903, 632 P.2d 44.
¶ 24 A person has almost no expectation of privacy in an access route to the house. Rose, 128 Wash.2d at 392, 909 P.2d 280 (quoting Seagull, 95 Wash.2d at 902, 632 P.2d 44). The expectation of privacy in a driveway is determined under a test of reasonableness. State v. Daugherty, 94 Wash.2d 263, 268, 616 P.2d 649 (1980), rev'd on other grounds by, State v. Hill, 123 Wash.2d 641, 870 P.2d 313 (1994). The court reviews (1) the exposure of the driveway to the street and surrounding public areas, (2) the use of the driveway for common access to the house, and (3) the nature of the official incursion. Daugherty, 94 Wash.2d at 268, 616 P.2d 649.
¶ 25 The front porch is not a constitutionally-protected area. Rose, 128 Wash.2d at 392, 909 P.2d 280 (quoting State v. Myers, 117 Wash.2d 332, 344, 815 P.2d 761 (1991)). However, a person's home is a constitutionally-protected area. State v. Young, 123 Wash.2d 173, 185, 867 P.2d 593 (1994). A person also has a reasonable expectation of privacy in his garage. State v. Dyreson, 104 Wash.App. 703, 712-13, 17 P.3d 668 (2001). An officer may not enter a garage merely because the garage door is open. Id. at 711, 17 P.3d 668.
¶ 26 Here, the open view doctrine is satisfied. Officer Grant saw the elk carcass inside the garage from a lawful vantage point when the garage door was open. Mr. Posenjak asserts that Officer Grant should have taken the other driveway. However, the driveway Officer Grant traveled was exposed *1213 to the street and surrounding public areas and used for common access to the house. Further, Officer Grant's official incursion into the residence was for legitimate business. Finally, there were not any "no trespassing" signs. In other words, a reasonably respectful citizen may have taken the south driveway.
¶ 27 Next, Mr. Posenjak asserts that he had a privacy interest in items located within his garage. Here, Officer Grant saw the elk carcass from a lawful vantage point. No privacy interest is affected by viewing the elk carcass from a lawful vantage point.
¶ 28 Finally, Mr. Posenjak asserts that Sergeant Ward should not have taken the elk carcass. He is technically correct. The open view doctrine protects the view of items located in constitutionally-protected. It does not provide authority to enter constitutionally-protected areas to take the items without first obtaining a warrant. Here, Officer Grant and Sergeant Ward intruded upon Mr. Posenjak's privacy by taking the elk from Mr. Posenjak's garage. However, Officer Grant testified that he saw the elk carcass and the view of the elk carcass did not infringe upon Mr. Posenjak's privacy. Put differently, any error in admitting the evidence of the elk carcass was harmless. In conclusion, Officer Grant was able to testify that he saw the elk carcass through the open garage under the open view doctrine.
¶ 29 Suppression of Statement. Mr. Posenjak asserts that his incriminating statement is not admissible because he was not provided his Miranda warnings. In order to trigger Miranda protections, a "suspect must be in custody or `otherwise deprived of his freedom of action in a significant way.'" State v. Mahoney, 80 Wash.App. 495, 496, 909 P.2d 949 (1996). Being deprived of freedom of action depends upon whether the "`suspect reasonably supposed his freedom of action was curtailed.'" State v. Richmond, 65 Wash. App. 541, 544, 828 P.2d 1180 (1992) (quoting State v. Short, 113 Wash.2d 35, 41, 775 P.2d 458 (1989)). The question is not whether a reasonable person would believe that he was free to leave but rather whether he would believe that he was in "`police custody of the degree associated with formal arrest.'" State v. Ferguson, 76 Wash.App. 560, 566, 886 P.2d 1164 (1995) (quoting 1 WAYNE R. LAFAVE & JEROLD H. ISRAEL, CRIMINAL PROCEDURE § 6.6, at 105 (Supp.1991)). The suspect must be subjected to custodial interrogation. State v. McWatters, 63 Wash.App. 911, 915, 822 P.2d 787 (1992). Incriminating statements and admissions that are not in response to an officer's questions are "freely admissible." Id.
¶ 30 In this case, Miranda does not provide Mr. Posenjak with any relief. First, he was not in custody or otherwise deprived of his freedom of action. On his own initiative, he exited the garage and spoke with Officer Grant. He was not under arrest. Instead, Mr. Posenjak was free to return to the garage. Second, Mr. Posenjak was not being interrogated. Instead, Mr. Posenjak volunteered the information. In conclusion, Mr. Posenjak's incriminating statements and admissions are admissible.
¶ 31 We affirm Mr. Posenjak's conviction.
WE CONCUR: KATO, C.J. and SCHULTHEIS, J.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).