**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 73893-3-I |
| | ) | |
| Appellant, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | |
| BRUCE M. SNYDER and GREGG B. SNYDER, | ) | UNPUBLISHED |
| | ) | |
| | ) | FILED: April 3, 2017 |
| Respondents. | ) | |
| | ) | |

Cox, J. — We granted discretionary review of the superior court's reversal of the convictions of Bruce Snyder and Gregg Snyder in district court for unlawful hunting in the second degree. The Snyders fail in their burden to establish their affirmative defense—that they were exercising treaty rights to hunt. Accordingly, we reverse the superior court's order on RALJ appeal and reinstate the district court judgments on the convictions for unlawful hunting in the second degree. We deny any request for sanctions.

Gregg Snyder shot and killed an elk outside a reservation in the Hamilton area of Skagit County. The season for hunting was closed and he did not have a state hunting license or tag. Bruce Snyder assisted Gregg Snyder in yarding out the elk from where it was shot and loading the elk for transport to his residence.

They were interviewed by State officials about these events during the investigation that followed the kill. The Snyders freely admitted what they had done. They asserted that they were exercising treaty rights as members of the Snoqualmoo Tribe. At the time of arrest, they had a tag issued by this tribe in their possession.

The State charged both with unlawful hunting in the second degree. The district court convicted them as charged. In doing so, it rejected their affirmative defense that they were exercising treaty rights as members of the Snoqualmoo Tribe.

Pursuant to Rule 2.2 and the other Rules for Appeal of Decisions, the Snyders appealed to superior court. On appeal, the RALJ court made its own findings of fact and conclusions of law. Among other things, this decision stated that the Snyders proved by a preponderance of the evidence their affirmative defense. Accordingly, the superior court directed that the case be remanded for an order of dismissal with prejudice of the criminal charges.

We granted the State's motion for discretionary review.

## UNLAWFUL HUNTING

Notably, the factual determinations by the district court, which tried the case, to the extent of its findings on commission of the charged crime of unlawful hunting in the second degree remain undisturbed. Specifically, neither the RALJ court nor the Snyders, in their briefing on review, challenge the determination that Gregg Snyder killed an elk out of season and outside a reservation and without a State tag. Likewise, Bruce Snyder does not challenge the

2

determination that he assisted Gregg Snyder in yarding out the elk from where it was shot and loading the elk for transport to his residence. Accordingly, these findings are verities on appeal.

The sole issue before us is whether their affirmative defense—the assertion of alleged treaty rights—bars conviction of the charges of unlawful hunting in the second degree. Thus, we focus on this affirmative defense.

## AFFIRMATIVE DEFENSE

The State argues that the superior court improperly concluded that the Snyders proved, by a preponderance of the evidence, their affirmative defense of treaty rights. We hold that this affirmative defense does not bar these charges.

RALJ 9.1 governs appellate review by a superior court of a district court decision. The rule explains that the superior court reviews whether the lower court committed legal error.[1] The superior court "shall accept those factual determinations supported by substantial evidence in the record (1) which were expressly made by the court of limited jurisdiction, or (2) that may reasonably be inferred from the judgment of the court of limited jurisdiction."[2] The superior court must accept not only the substance of the district court's factual findings but the weight the district court gave them.[3] We apply the same standard of review to a decision of the superior court.[4]

---

[1] RALJ 9.1(a).

[2] RALJ 9.1(b).

[3] See State v. Thomas, 150 Wn.2d 821, 866, 83 P.3d 970 (2004).

[4] State v. Weber, 159 Wn. App. 779, 786, 247 P.3d 782 (2011).

3

The State argues, among other things, that the RALJ court erred by making new factual findings based on anecdotal agricultural evidence. We need not address whether it was proper for the RALJ court to enter its own findings rather than accepting those findings of the district court that were supported by substantial evidence in the record. Rather, we examine this record and relevant case law to determine whether the Snyders established in the district court their affirmative defense of treaty rights to hunt.

A member of an Indian tribe may assert his or her treaty right to hunt or fish as an affirmative defense to a charge of illegal hunting or fishing.[5] This is because such rights, affirmed by federal treaty, preempt the application of state hunting laws.[6] The defendant asserting such rights must prove them by a preponderance of the evidence.[7]

Both the district court and the RALJ court looked to State v. Posenjak.[8] This Division Three case addressed a similar assertion of the affirmative defense of treaty rights. There, the court stated and applied a three-part test to determine whether an individual may invoke treaty rights as an affirmative defense to hunting.

Under that test, a person must "show by a preponderance of the evidence (1) the existence of the treaty, (2) of which he is a beneficiary, and (3) that, as a

---

[5] State v. Posenjak, 127 Wn. App. 41, 48, 111 P.3d 1206 (2005).

[6] Id.

[7] Id.

[8] 127 Wn. App. 41, 48, 111 P.3d 1206 (2005).

matter of law, the treaty saves him from the operation and enforcement of the hunting laws and regulations."[9] We consider, in turn, each of these three elements as applied to the case before us.

### Existence of a Treaty

The first element, existence of a treaty, is undisputed. In 1855, the United States signed the Treaty of Point Elliot with numerous Puget Sound tribes.[10] The list of tribal signatories included Patkanim, chief of the Snoqualmoo and Snohomish tribes. Under this treaty, the signatory tribes ceded vast swathes of territory. In exchange, Article 5 guarantees:

> [t]he right of taking fish at usual and accustomed grounds and stations is further secured to said Indians in common with all citizens of the Territory, and of erecting temporary houses for the purpose of curing, ***together with the privilege of hunting and gathering roots and berries on open and unclaimed lands.***[11]

Thus, the Treaty of Point Elliot protects the hunting rights of its proper beneficiaries.

### Treaty Beneficiary Status

Whether the Snyders are proper beneficiaries of this treaty is the next issue. The State argues the Snyders are not such beneficiaries of the treaty because their group, the Snoqualmoo Tribe, is not a treaty tribe. Thus, it argues

---

[9] Id.

[10] Treaty Between the United States & the Dwamish, Suquamish, & Other Allied & Subordinate Tribes of Indians in Washington Territory, Jan. 22, 1855, 12 Stat. 927.

[11] Id. at art. 5 (emphasis added).

that no treaty right is an affirmative defense to the charges in this matter. We agree.

To exercise treaty rights, members of a modern tribe "'must establish that their group has preserved its tribal status.'"[12] This is because treaty rights reside in the group, not the individual. Division Three of this court has explained that the required showing has two elements. First, the tribal member asserting the defense must show his tribe has "maintained an 'organized tribal structure.'"[13] Second, members must show their group is one of "'citizens of Indian ancestry [who are] descended from a treaty signatory.'"[14] This reflects the rule that "[i]ndividual Indians do not have any treaty rights, even if they are descendants of the signors of the treaty, because a treaty is a contract between sovereigns, not individuals."[15]

The tribal member, or in appropriate circumstances not present here, the tribe, bears the burden of proving these elements by a preponderance of the evidence.[16]

---

[12] Posenjak, 127 Wn. App. at 49 (quoting United States v. Oregon, 29 F.3d 481, 484 (9th Cir. 1994)).

[13] Id. (quoting Oregon, 29 F.3d at 484).

[14] Id. (quoting United States v. Washington, 520 F.2d 676, 693 (9th Cir. 1975)).

[15] Id. at 48.

[16] Id. at 49.

The parties' dispute focuses on the first element, whether the modern Snoqualmoo tribe represents a continued "'organized tribal structure'" from that original form.[17]

The federal courts have considered this element at length regarding the tribal parties to the Treaty of Point Elliot. The Posenjak court, following Ninth Circuit precedent, has explained that a party can meet this element in one of two ways.[18]

First, tribal members can show their organization was the same tribe that signed the treaty.[19] To do so, they must show their tribe "has maintained an organized tribal structure" from treaty time to the present.[20] A tribe does so if "some defining characteristic of the original tribe persists in an evolving tribal community."[21] In considering that persistence, we remain mindful that centuries of political challenge have forced tribes to adapt, and thus "[c]hanges in tribal policy and organization attributable to adaptation will not necessarily destroy

---

[17] Id. (quoting Oregon, 29 F.3d at 484).

[18] Id.

[19] Id.

[20] Id.

[21] Id.

treaty tribe status."[22] But "[t]o warrant special treatment, tribes must survive as distinct communities."[23]

The Ninth Circuit Court of Appeals elaborated upon this analysis in considering the effort of several tribes, including the modern Snoqualmie Tribe, to intervene in the ongoing United States v. Washington fishing dispute.[24] These tribes descended from Puget Sound Indians who "did not go to reservations, because the reservations were inadequate" and now "live[d] among non-Indians and [we]re not federally recognized."[25] Addressing whether such tribes could assert treaty rights, the Ninth Circuit first held that mere federal recognition was unnecessary to support the exercise of treaty rights.[26] "The [p]roper [i]nquiry," by contrast, focused on whether the group had "maintained an organized tribal structure," defined by the preservation of "some defining characteristic of the original tribe."[27]

The tribes in that group "point[ed] to their management of interim fisheries, pursuit of individual members' treaty claims, and social activities as evidence of

---

[22] United States v. Suquamish Indian Tribe, 901 F.2d 772, 776 (9th Cir. 1990).

[23] United States v. State of Wash., 641 F.2d 1368, 1373 (9th Cir. 1981).

[24] Id. at 1370.

[25] Id. at 1370-71.

[26] Id. at 1372.

[27] Id. at 1372-73.

tribal organization."[28] The trial court had found the tribal members had descended from treaty signatories.[29] The Snoqualmie Tribe, for example, descended from Patkanim and the treaty time Snoqualmoo Indians.[30] The tribes had modern "constitutions and formal governments."[31] But the trial court in that case found that the groups' "[p]resent members ha[d] no common bond of residence or association other than such association as is attributable to the fact of their voluntary affiliation."[32] The court found that tribes' dealings with the United States and Washington "were not different in substance from those engaged in by any social or business entity."[33]

But the Ninth Circuit concluded these facts were insufficient for two reasons. First, "the [tribal] governments [did] not control[] the lives of the members."[34] Second, the facts failed to "clearly establish[] the continuous informal cultural influence the[ tribes] concede is required."[35] Thus, the Ninth Circuit concluded the tribes could no longer assert treaty rights. This case

---

[28] Id. at 1373.

[29] Id.

[30] United States v. State of Wash., 476 F. Supp. 1101, 1108 (W.D. Wash. 1979).

[31] Washington, 641 F.2d at 1373.

[32] Washington, 476 F. Supp. at 1109.

[33] Id.

[34] Washington, 641 F.2d at 1373.

[35] Id.

demonstrates that the continuing tribal structure must be political, not merely social or cultural.

These principles later led the Ninth Circuit to reject a Snoqualmoo member's claim that the Washington State Department of Fish and Wildlife had violated his treaty rights.[36] The court did so because the member failed to prove sufficient facts showing that the Snoqualmoo preserved a sufficient defining characteristic of a treaty tribe.[37] Similarly, Division Three of this court held that the modern Snoqualmoo Tribe was not a signatory to the Treaty of Point Elliot.[38]

Here, the RALJ court stated the appropriate standard. It concluded that the Snyders could meet their burden if they showed they were the beneficiaries of a treaty that barred application of the hunting laws. It concluded that they could show themselves the treaty's beneficiaries if they could establish that their tribe had maintained its structure and its defining characteristics. But because the court did not require that structure to be political, it relied on the wrong sort of characteristics.

The Snyders failed to show the Snoqualmoo Tribe has maintained the continued political structure contemplated by the relevant case law. Indeed, the record shows that tribal enforcement of hunting restrictions appears theoretical and non-existent in practice. Substantial evidence presented in the district court

---

[36] Posenjak v. Dep't of Fish & Wildlife of State of Wash., 74 F. App'x 744, 747 (9th Cir. 2003).

[37] Id.

[38] Posenjak, 127 Wn. App. at 49.

showed that the modern Snoqualmoo Tribe formed in the 1980s out of a mixture of persons banished from, and persons found ineligible for membership, in the recognized Snoqualmie Tribe. Thus, like the putative tribal intervenors in United States v. Washington, the Snoqualmoo Tribe can show a modern formal government and continued cultural traditions. But they can show "no common bond of residence or association other than such association as is attributable to the fact of their voluntary affiliation."[39] Accordingly, the RALJ court improperly concluded that the Snyders proved by a preponderance of the evidence that their tribe had maintained a sufficient political structure to warrant treaty rights.

By contrast, the RALJ court relied upon findings that the Snoqualmoo Tribe had maintained cultural naming rituals and practices of potato cultivation. Such practices are insufficient to show that the tribe had continued to maintain a *political* structure.

The Snyders argue that the superior court correctly concluded that even if the modern Snoqualmoo Tribe did not sign the Treaty of Point Elliot itself, it is a successor in interest to the treaty time Snoqualmoo Tribe's rights. We disagree.

If a modern tribe cannot show itself the same entity that signed the treaty, it can attempt to prove itself the successor in interest to the original signatory tribe.[40] To do so, it must still show both ancestry from a signatory and continued organizational structure.[41] But it must also show that it and the signatory tribe

---

[39] Washington, 476 F. Supp. at 1109.

[40] Id.

[41] Suquamish Indian Tribe, 901 F.2d at 776.

11

"consolidated or merged and demonstrate also that together they maintain an organized tribal structure."[42]

This rule allows modern tribal confederations like the Tulalip and Muckleshoot Tribes, not in existence when the Treaty of Point Elliot was signed, to succeed to the rights of the smaller treaty tribes that long ago merged into their consolidated governments.[43] By contrast, the Ninth Circuit has declined to find a merger on the mere fact that two tribes descend from the same treaty signatory or lived together in the same territory.[44] Based upon the same standards, Division Three of this court concluded that a Snoqualmoo member failed to show his tribe was the successor to a signatory tribe.[45]

Here, the Snyders cannot prove their tribe was the successor to a treaty tribe. The RALJ court failed to account for the lack of political continuity. Thus, it failed to appropriately consider whether the Snoqualmoo Tribe had treaty rights as successor to a treaty status tribe.

The Snoqualmoo Tribe did not consolidate or merge with a recognized treaty tribe. Rather, it appears to have split in the 1980s from the Snoqualmie Tribe. Its members share common ancestry with that tribe. But the Snoqualmie Tribe is a sovereign nation with legal control over the structure of its membership. To the extent the Snoqualmoo were historically merged with the Snoqualmie,

---

[42] Id.

[43] Id. at 775 n.8.

[44] Id. at 776.

[45] Posenjak, 127 Wn. App. at 49.

12

they are no longer because the latter concluded that the Snoqualmoo members could not meet the requirements for membership. Besides, the Snoqualmie Tribe itself does not enjoy previously adjudicated treaty rights.[46] Thus, we conclude that the Snyders fail to establish that their tribe succeeded to the Snoqualmie Tribe's rights.

The second element is undisputed. The Snyders descend from the original Snoqualmoo Tribe that signed the Treaty of Point Elliot.

Gregg Snyder advances several arguments why the above analysis is improper. He argues that these tests are not relevant because they originate in fishing and not hunting cases. He claims that "[t]here are no hunting cases in Washington state that establish a tribe's right to hunt or not." This argument is without merit.

Not only did the supreme court address hunting rights in State v. Buchanan,[47] but the distinction is irrelevant. Hunting rights differ from fishing rights in their exercise, based upon the different language of the treaty rights. But Gregg Snyder provides no argument why that distinction should apply to determining whether a modern tribe enjoys a signatory's treaty status. Thus, the test derived from the fishing cases equally controls here.

He also argues that state courts cannot consider these tests to determine tribal treaty status because they concern a "matter of federal law." Gregg Snyder

---

[46] Washington, 476 F. Supp. at 1111.

[47] 138 Wn.2d 186, 978 P.2d 1070 (1999).

cites no authority for this contention, so we need not consider it.[48] We decline to do so.

Gregg Snyder finally argues that the "criminal law in Washington has changed regarding affirmative defenses since the Moses, James and Petit cases [discussing the burden of proof for such defenses] were decided."[49] While not entirely clear what point he seeks to make, he cites State v. Lively,[50] a case discussing whether the burden of proof respecting an affirmative defense may shift to the State. The State does not respond to this attempt at an argument. We do.

To the extent Gregg Snyder intends to argue that the burden of proof shifted to the State in this case, we conclude that the State met its burden to disprove beyond a reasonable doubt the affirmative defense. We do so on the bases previously discussed in this opinion. In addressing this contention, we do not imply that there has been a showing that the burden of proof shifted in this case.

Bruce Snyder also argues these Ninth Circuit Court of Appeals decisions governing Northwest treaty rights are not controlling in this matter. He cites two cases in support but neither is persuasive.

---

[48] See Darkenwald v. Emp't Sec. Dep't, 183 Wn.2d 237, 248, 350 P.3d 647 (2015); RAP 10.3(a)(6).

[49] Respondent Gregg Snyder's Response Brief and Objection to Snoqualmie Tribe's Status as Amicus Curiae and Filing a Brief at 13.

[50] 130 Wn.2d 1, 921 P.2d 1035 (1996).

The first, In re Detention of Turay, considered whether federal precedent controlled interpretation of Washington evidence rules.[51] There, the supreme court held that "'federal case law interpreting a federal rule is not binding on this court even where the rule is identical [because] [t]his court is the final authority insofar as interpretations of this State's rules is concerned.'"[52] This criminal prosecution case is distinguishable because it concerns not a state evidentiary rule but whether the affirmative defense of federally guaranteed Indian treaty rights applies.

In the second case, W.G. Clark Construction Co. v. Pacific Northwest Regional Council of Carpenters, the supreme court held that federal circuit precedents were not binding upon the state supreme court's interpretation of United State Supreme Court ERISA precedent.[53] This holding does not bar us from following persuasive precedent from federal courts.

In 1974, the United States District Court for the Western District of Washington, as affirmed by the United States Supreme Court, took continuing jurisdiction over fishing disputes arising from the Treaty of Point Elliot and other

---

[51] 139 Wn.2d 379, 986 P.2d 790 (1999).

[52] Id. at 402 (quoting State v. Copeland, 130 Wn.2d 244, 258-59, 922 P.2d 1304 (1996)).

[53] 180 Wn.2d 54, 62, 322 P.3d 1207 (2014).

treaties.[54] Since then, the federal courts have not only interpreted these treaties but continue to supervise their application. The supreme court has held that the lower federal court rulings in this matter bind the State, state courts, private individuals like the Snyders, and organizations like the Snoqualmoo Tribe.[55] We see no reason why we should not follow this guidance in the case of hunting rights.

## SANCTIONS

Gregg Snyder argues that we should sanction the State for citing to the Ninth Circuit's opinion in Posenjak because that opinion was unpublished. We disagree.

Gregg Snyder fails to cite to authority to support this argument concerning citation to unpublished decisions of federal courts. Accordingly, we could reject this argument on this basis alone.[56]

In any event, it is difficult to see why the citation to this single case prejudiced him in any way. For these reasons, we reject this argument.

---

[54] United States v. Wash., 384 F. Supp. 312 (W.D. Wash. 1974), aff'd, 520 F.2d 676 (9th Cir. 1975), cert. denied, 423 U.S. 1086, 96 S. Ct. 877, 47 L. Ed. 2d 97, rehearing denied, 424 U.S. 978, 96 S. Ct. 1487, 47 L. Ed. 2d 750 (1976); 459 F. Supp. 1020 (W.D. Wash. 1978), aff'd sub nom., Puget Sound Gillnetters Ass'n v. U.S. Dist. Court for the W. Dist. of Wash., 573 F.2d 1123 (9th Cir. 1978), aff'd in part, vacated in part, and remanded sub nom., Wash. v. Wash. State Commercial Passenger Fishing Vessel Ass'n, 443 U.S. 658, 99 S. Ct. 3055, 61 L. Ed. 2d 823 (1979).

[55] Puget Sound Gillnetters Ass'n v. Moos, 92 Wn.2d 939, 950-51, 603 P.2d 819 (1979).

[56] See Darkenwald, 183 Wn.2d at 248; RAP 10.3(a)(6).

We reverse the superior court's order on RALJ appeal and reinstate the district court judgments on the convictions for unlawful hunting in the second degree. We deny the request for sanctions.

Cox, J.

WE CONCUR:

Trickey, ACJ

Schindler, J